122 So.2d 471 (1960)
TAMPA ELECTRIC COMPANY, a Florida Corporation, Petitioner,
v.
WITHLACOOCHEE RIVER ELECTRIC COOPERATIVE, INC., a Nonprofit Florida Corporation, Respondent (Two Cases).
Supreme Court of Florida.
June 24, 1960.
Charles S. Ausley of Ausley, Ausley & McMullen, Tallahassee, and Sam Bucklew, of Bucklew, Ramsey & Phillips, Tampa, for petitioner.
George C. Dayton, Charlie Luckie, Jr., of Dayton, Dayton & Luckie, Dade City, and J. Lewis Hall, of Hall, Hartwell & Douglass, Tallahassee, for respondents.
HOBSON, Justice.
This litigation involves two consolidated petitions for writs of certiorari on the alleged ground that the District Court's decisions[1] are in direct conflict *472 with this court's decision in the case of St. Joseph Tel. & Tel. Co. v. Southeastern Tel. Co., 1941, 149 Fla. 14, 5 So.2d 55.
The Second District Court of Appeal's opinion[2] reflects the following pertinent facts:
"Tampa Electric Company is engaged in the business of manufacturing, distributing and selling electric energy. It is a public utility company in the State of Florida within the definition of Chapter 366, Florida Statutes, F.S.A., and holds a non-exclusive franchise to do business in the territory involved in this case. * * * The Withlacoochee River Electric Cooperative, Inc., is engaged in the same business as the Tampa Electric Company but is organized and exists under Chapter 425, Florida Statutes, F.S.A., which is an incorporation statute for cooperative, non-profit membership corporations, desiring to be organized thereunder, for the purpose of supplying electric energy in rural areas. A `rural area' is defined therein as:
"`* * * any area not included within the boundaries of any incorporated or unincorporated city, town, village, or borough having a population in excess of twenty-five hundred persons;'
"Section 425.04 sets out the powers given by the legislature to such cooperatives, included among which is the power to sell electric energy in rural areas (Subsection 4).
"`* * * provided, however, that no cooperative shall distribute or sell any electricity, or electric energy to any person residing within any town, city or area which person is receiving adequate central station service or who at the time of commencing such service, or offer to serve, by a cooperative is receiving adequate central station service from any utility agency, privately or municipally owned individual partnership or corporation;'"
Being an electric utility cooperative, Withlacoochee is not subject to the provisions of Chapter 366. In the instant cases Tampa Electric obtained a temporary restraining order enjoining Withlacoochee from furnishing electric energy to certain persons in a rural area.
"In the instant case Withlacoochee was restrained from supplying service to a corporation. The basis for the chancellor's findings was that the corporation is but the alter ego of a partnership, on adjoining land, which Tampa Electric was at the time serving. Ordinarily, such a suit could not be brought by the Tampa Electric, but would have to be brought by the state itself. In their complaint Tampa Electric alleged that unless the restraining order was so entered, it would take away from Tampa Electric certain valuable property rights by virtue of depriving Tampa Electric of the revenue which it would receive from the services to be rendered in the future and that the Tampa Electric would be irreparably injured thereby. So, in deciding the right of Tampa Electric to bring this suit we must necessarily take into account the allegations of the complaint, which we have just paraphrased."[3] (Emphasis supplied.)
Referring to the foregoing, the majority of the District Court reversed the chancellor's order on the principal ground that under this court's decision in the St. Joseph case, supra, Tampa Electric does not have sufficient standing in a court of equity to bring the instant suits.
Associate Judge Murphree dissented because it was his belief that these cases fell within the exception to the general rule *473 established in the St. Joseph case.[4] He also indicated that the cooperative's action violated the intendments of § 425.04(4), F.S.A. to the direct injury of the private property rights of Tampa Electric.
The following excerpt from the opinion in the St. Joseph case, supra, is pertinent for our consideration in view of the fact that it was and is relied on by both the petitioner and the respondent, as well as being the basis of the District Court's decisions:
"Under the law and practice in Florida, the State may invoke appropriate judicial remedies for an abuse or violation of corporate or franchise authority that is conferred pursuant to State law; but private parties or corporations may not invoke judicial remedies for an abuse of, or a violation of, corporate or franchise authority conferred by the State. * * *
"While the validity and scope of the corporate franchise rights conferred upon a public utility company may not be tested in a suit brought by a private party or corporation, yet when property of a public utility corporation is trespassed upon or is unlawfully injured or endangered, or the public utility corporation is unlawfully and materially hindered in the performance of its duty in rendering its authorized public service, by a potential competitor or others, the law provides for obtaining relief or redress at the suit of the injured party, East Fla. Telephone Co. v. Seaboard Airline Ry. Co., 85 Fla. 378, 96 So. 95; and when the nature of the case warrants it under the law, and the facts are properly and sufficiently presented, appropriate judicial relief by injunction may be granted as provided by law and the principles of equity, without adjudicating the corporate franchise rights of a defendant corporation. Sec. 4856 et seq., Fletcher's Cyclopedia of Corporations. See Northwestern Tel. Exch. Co. v. Twin City Tel. Co., 89 Minn. 495, 95 N.W. 460; New Hartford Water Co. v. Village Water Co., 87 Conn. 183, 87 A. 358." (Emphasis supplied.)
The petitioner maintains the activities of Withlacoochee "resulted in damage to the property rights of Tampa Electric by the loss of profits and by the waste and disuse of equipment".
It is our opinion that the complaint in this case sufficiently alleges that the cooperative in these cases has used its preferential economic advantage as a means of extending its service to customers previously being adequately served by Tampa Electric.[5] Such activity exceeds not only the fundamental underlying purpose which motivated the establishment of the rural electrification program,[6] but also it violates the plain language as well as the spirit of Section 425.04, F.S.A. Further, we are in accord with the petitioners and Associate Judge Murphree in their conclusion that the cooperative's activities are tantamount to an unlawful injury or hindrance of Tampa Electric's property rights.
The opinion and decision herein rendered by the District Court of Appeal, Second District, is in direct conflict with our decision *474 in the case of St. Joseph Tel. & Tel. Co. v. Southeastern Tel. Co., 1941, 149 Fla. 14, 5 So.2d 55, in that said court followed the general rule laid down in the St. Joseph case, whereas it should have followed the exception set forth therein. The District Court of Appeal's opinion shows on its face, by paraphrasing the allegations of the complaint, that the exception to the general rule laid down in the St. Joseph case should have been applied to these cases.
The orders of the District Court of Appeal, Second District, to which these petitions for certiorari are directed, should be and are hereby quashed, with directions that said court enter orders consistent with his opinion and remand these cases for further proceedings in the Circuit Court of the Sixth Judicial Circuit.
It is so ordered.
THOMAS, C.J., and TERRELL, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] Fla.App., 1959, 115 So.2d 9 and 17.
[2] Fla.App., 1959, 115 So.2d 9.
[3] Withlacoochee River Electric Coop. v. Tampa Electric Co., Fla.App. 1959, 115 So.2d 9, 10.
[4] The rule and its exception may be found in St. Joseph Tel. & Tel. Co. v. Southeastern Tel. Co., 1941, 149 Fla. 14, 5 So.2d 55, 57 and 58.
[5] Mere change in ownership or business structure does not mask the fact that Tampa Electric was previously providing adequate service to the precise sites involved.
[6] It is a matter of common knowledge that the real purpose to be served in the creation of REA was to provide electricity to those rural areas which were not being served by any privately or governmentally owned public utility. It was not intended that REA should be a competitor in those areas in which as a matter of fact electricity is available by application to an existing public utility holding a franchise for the purpose of selling and serving electricity in a described territory.